IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| MELVIN MENDOZA, *et al.*, *On behalf of themselves and others similarly situated*,     *Plaintiffs*, <br><br> v. <br><br> MO'S FISHERMAN EXCHANGE, INC., *et al.*     *Defendants*. | Civil Action No. ELH-15-1427 |

**MEMORANDUM**

Plaintiffs Melvin Mendoza, Erick Rivera, and Armando Portillo have filed suit against Mo's Fisherman Exchange, Inc. and Mohammed S. Manocheh, doing business as Mo's Seafood Restaurant; Mo's Fisherman's Wharf; Mo's; Mo's Seafood Factory; Mo's Crab and Pasta Factory; and Mo's Neighborhood Bar and Grill, alleging violations of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 *et seq.* ECF 1 ("Complaint"). Plaintiffs claim "willful failure" by defendants "to pay Plaintiffs their wages, including minimum and overtime wages." Plaintiffs have also lodged claims under the Maryland Wage and Hour Law, Md. Code, § 3-401 *et seq.* of the Labor & Employment Article ("L.E."), and the Maryland Wage Payment and Collection Law, L.E. § 3-501 *et seq.* The Complaint also includes a count for "Quantum Meruit (Individual and Class Action)." ECF 1 at 15. Plaintiffs characterize the suit as both a collective action under the FLSA and as a class action under Fed. R. Civ. P. 23(b)(3). ECF 1, ¶ 2. Defendants filed an Answer to the Complaint. ECF 13.

Thirty-two additional plaintiffs have since joined the suit, pursuant to 29 U.S.C. § 216(b). *See* ECF 9; ECF 10; ECF 23; ECF 34; ECF 45; ECF 46; ECF 47; ECF 49; ECF 50; ECF 51; ECF 52; ECF 54; ECF 56; ECF 60 (collectively, "Opt-In Plaintiffs").

By Memorandum (ECF 37) and Order (ECF 38) of June 23, 2016, I granted in part and denied in part plaintiffs' Motion to Certify the Collective (ECF 25). In particular, I granted the Motion "as to conditional certification of the proposed collective for the period of three years prior to date of [the] Order, to present." ECF 38 ¶ 1. But, to the extent plaintiffs sought approval of the Proposed Notice (ECF 25-2; ECF 25-3), I denied the Motion. *Id.* ¶ 1. And, I directed "plaintiffs [to] submit an amended Proposed Notice that comports with [the] Memorandum Opinion [ECF 37], as well as a proposed version of the Proposed Notice to be disseminated on Facebook." *Id.* ¶ 3.

The parties subsequently submitted a Consent Motion to Approve Notice. *See* ECF 40. By Order of July 14, 2016 (ECF 42), I granted that motion. In particular, I ordered "that the Notice attached as ECF No. 40, Exhibit 1 [*i.e.*, "Notice of Collective Action"] be distributed as set forth in the Court's order of June 23, 2016 [ECF No. 38] and also in the plan set forth in ECF No. 40, Exhibit [3] ('Social Media Plan for Distribution of Notice')." ECF 42. Pursuant to the Social Media Plan for Distribution of Notice, I also permitted plaintiffs' counsel to advertise the collective action by posting on Facebook, in English and Spanish, an abbreviated notice approved by the Court. *See* ECF 40-3 ("Facebook Notice"). The Facebook Notice states, ECF 40-3:

> Attention all hourly employees from Mo's Seafood and/or Pasta Restaurants: if you worked at any Baltimore-area Mo's restaurant at any time between June 23, 2013 and the present, you may be eligible to join a lawsuit for unpaid wages, including overtime. Click on the link for more information and to join this lawsuit.

The Facebook Notice contains a link to a website dedicated to this case. ECF 40-3. This Website contains "(1) the name of the case (2) the full text of the Notice [of Collective Action] in English and Spanish, (3) downloadable versions (into PDFs and/or Word documents) of the Notice and the Opt-In form, (4) the Notice deadline, and (5) Plaintiffs' attorneys' contact information." *Id.*

The complete eight-page Notice of Collective Action contains an "Introduction" setting forth the background of the case; a "Description of the Lawsuit," *i.e.*, a description of plaintiffs' claims; a statement describing "Who Can Join the Lawsuit"; a statement making clear that "No Retaliation [is] Permitted" against any claimants; a detailed explanation of "How to Participate"; a statement explaining the "Effect of Joining the Lawsuit"; and a statement explaining that there is "No Legal Effect In Not Joining Suit." ECF 40-1.

On September 16, 2016, plaintiffs filed a "Motion to Approve Social Media Spending and Response to Queries." ECF 53 ("Motion"). It is supported by the Declaration of Hannah Walsh, a paralegal. ECF 53-1. Plaintiffs seek "to (1) increase their spending on dissemination of the notice of the action on social media; and (2) post a pre-approved response to queries about the case made by potential class members through social media." *Id.* at 1.

In particular, plaintiffs assert, ECF 53 at 3:

> To avoid further perpetuating such misapprehensions, Plaintiffs seek explicit permission to respond on Facebook to queries about the suit with a simple, non-specific statement: **"If you have questions about this lawsuit, including whether you are eligible to join it, please review the Notice of the lawsuit, accessible by clicking the link on the Facebook post above, or call the telephone number listed in that Notice."** (Emphasis added).

Plaintiffs represented in the Motion: "After conferring with counsel for Defendants, undersigned counsel is authorized to represent that Defendants consent to Plaintiffs' request for approval of an additional $1,000 in spending on the Facebook advertisement, but not to

3

Plaintiffs' request for permission to respond to comments." *Id.* at 3.  Therefore, by Order dated October 5, 2016 (ECF 59), I approved the portion of the Motion pertaining to the request to increase social media spending, to which defendants had consented.  But, I noted that the "Order [did] not address the portion of ECF 53 that concerns the parties' dispute as to plaintiffs' request to respond to queries" because "[t]hat dispute was not yet ripe for resolution." *Id.*

On October 4, 2014, defendants submitted their response to the disputed portion of ECF 53.  ECF 57 ("Opposition").  Plaintiffs have replied.  ECF 61 ("Reply").

No hearing is necessary to resolve the Motion.  *See* Local Rule 105.6.  For the reasons stated below, I shall deny the Motion as it pertains to the request to respond to queries.

### I. Discussion

#### A.

As a preliminary matter, Plaintiffs contend, ECF 61 at 1-2:

Defendants' opposition to the motion is untimely. Under Federal Rule of Civil Procedure 6(d), and as noted in the electronic docket for this case, Defendants' opposition was due on October 3, 2016. Instead, Defendants filed on October 4, 2016 without previously seeking or receiving leave to file at a later date… The tardiness of Defendants' opposition is reason alone to rule in Plaintiffs' favor.

Plaintiffs submitted their Motion on September 16, 2016.  Pursuant to Local Rule 105.2(a) and Fed. R. Civ. P. 6(d), the opposition was due 17 days later, on October 3, 2016.  Thus, the Opposition was filed one day late.  However, defendants' brief delay has not prejudiced the plaintiffs in any way.  Therefore, in the exercise of my discretion, I shall consider the Opposition.

#### B.

Turning to the merits, plaintiffs "seek leave to respond using a pre-approved message to queries made via Facebook in response to their post." ECF 53 at 2.  They assert, *id.* at 2-3:

4

Some of these queries indicate a mistaken belief among potential plaintiffs that they are ineligible to join the suit. For example, on July 30, 2016, one user commented "being paid under the table is no employee's choice . . . I guess that means that those of us who worked under the table are screwed?" On July 28, another user commented "Most people here got letters but I haven't . . . ." Plaintiffs' counsel have come to realize that it is unclear whether and to what extent counsel can take steps incident to the posting to ensure that the Notice is effective. Accordingly, counsel have not generally responded to these queries and, through their silence, may have implicitly reinforced the incorrect view of these commenters (and those of any other potential opt-in plaintiffs who viewed the exchange) that Mo's employees who worked under the table or did not receive notice of the action by mail cannot participate in the action.[]

Defendants counter that plaintiff's "request crosses the boundary between being allowed to publicize a lawsuit and directly communicating with and soliciting individuals to participate in that lawsuit." ECF 57, ¶ 5. In addition, defendants assert, *id.* ¶ 8:

> 8.   There has been no evidence or testimony presented by Plaintiffs' counsel demonstrating the that [sic] Notice of Collective Action – which was drafted by Plaintiffs' Counsel –has been misunderstood or has created confusion, nor has there been any evidence or testimony presented showing that the Notice of Collective Action is ineffective. Consequently, there is no reason for the Court to allow Plaintiffs' Counsel to cross the boundary between advertising and soliciting potential opt in candidates.

Defendants also disagree with plaintiffs' characterization of the queries by the Facebook users, *id.* ¶¶ 6, 7:

> 6.   For example, Plaintiffs' counsel points to a comment made by a Facebook user on July 30, 2016 that "being paid under the table is no employee's choice . . . . I guess that means that those of us who worked under the table are screwed?" Neither Plaintiffs' counsel, nor the Court, know whether that person was being facetious, or was expressing a political opinion, or was referring to another job that he or she held in the past. Allowing Plaintiff's counsel to directly respond to the user, however, thereby effectively beginning a dialogue, would potentially have the unintended (or intended) effect of soliciting the user and encouraging the user to opt in to the lawsuit.
>
> 7.   Similarly, Plaintiffs' counsel points to a comment made by a Facebook user on July 28, 2016 that "Most people here got letters but I haven't . . . ." as a reason that they need to respond to the user, but Plaintiffs' counsel's concerns are baseless. It is undisputed that the user identified by Plaintiffs' counsel did, in fact, receive the Facebook posting and has the option of reading the Notice of

5

Collective Action and choosing whether to opt in or not. The issue of whether that person received a letter or not is irrelevant, but by allowing Plaintiffs' counsel to directly communicate with the user, the Court would be encouraging a dialogue and effectively making it more likely that person would opt in to the lawsuit.

In Reply (ECF 61), plaintiffs assert that "courts have permitted communications by Plaintiffs' counsel after phone or in-person inquiries by potential class members" (*id.* at 1), and that their request is comparable. *Id.* at 2. They explain, *id.*:

[Plaintiffs] seek to post the [proposed] statement only after a potential plaintiff first communicates, through Facebook, a question or concern about his/her eligibility to join the suit. Defendants do not dispute that Plaintiffs' counsel could respond to such questions if communicated by phone, and Plaintiffs' motion simply seeks the opportunity to respond in a limited fashion to inquiries made instead through social media.[]

Plaintiffs also claim, *id.* at 2:

Defendants' suggestion that the Response is unnecessary because there has been no "evidence or testimony" that the Notice "has been misunderstood or has created confusion" fails to account for the evidence that Plaintiffs have presented. Plaintiffs have cited comments by potential opt-ins on Facebook that, when read in their context, clearly indicate their concern that they may not be eligible to join the suit if they worked for the Defendants under the table or did not receive an Opt-In Notice. Defendants' interpretation of such comments in a contrary manner stretches the norms of communication on social media or otherwise.

Judges in this district have previously refused to permit plaintiffs' counsel to send reminder notices to potential class members in FLSA cases, because reminder notices have "the potential to unnecessarily 'stir up litigation[.]'" *Calderon v. Geico Gen. Ins. Co.*, RWT-10-CV-1958, 2011 WL 98197, at *8 (D. Md. Jan. 12, 2011) (citing *Montoya v. S.C.C.P. Painting Contractors, Inc.*, CCB-07-455, 2008 WL 554114, at *4 (D. Md. Feb. 26, 2008)); *see also Montoya*, CCB-07-455, 2008 WL 554114, at *4 ("The court must take pains, however, to 'avoid the "stirring up" of litigation through unwarranted solicitation,' and to recognize that 'an employer should not be unduly burdened by a frivolous fishing expedition conducted by plaintiff

6

at the employer's expense.'") (quoting *D'Anna v. M/A–COM, Inc.*, 903 F. Supp. 889, 894 (D. Md. 1995)).

Similarly, "numerous district courts around the country have found that reminder notices have a tendency to both stir up litigation, and inappropriately encourage putative plaintiffs to join the suit." *Byard v. Verizon W. Virginia, Inc.*, 287 F.R.D. 365, 373 (N.D.W. Va. 2012) (internal citation omitted) (citing *Calderon*, RWT-10-1958, 2011 WL 98197, at *3); *Knispel v. Chrysler Group LLC*, 11–11886, 2012 WL 553722, at *8 (E.D. Mich. Feb. 21, 2012); *Smallwood v. Illinois Bell Tel. Co.*, 710 F. Supp. 2d 746, 753–54 (N.D. Ill. 2010)).

In my view, plaintiffs' proposal is analogous to a reminder notice. Plaintiffs advise that they "seek only to be able to redirect individuals who raise questions about the Notice on Facebook to the Notice [of Collective Action] itself and the telephone number contained within it." ECF 61 at 3. In other words, plaintiffs seek to direct certain Facebook users to read the Notice of Collective Action more carefully. Although plaintiffs contend that their proposal seeks only to communicate with potential plaintiffs who communicate with them first (*id.* at 2), plaintiffs concede that their proposed "response would be visible to potential opt-in plaintiffs who did not themselves make the initial inquiry[.]" *Id.* at 2 n. 2. Plaintiffs' proposal thus functions in a fashion similar to a reminder notice.

In addition, in previous FLSA cases, courts have prohibited parties and their counsel from communicating with potential opt-ins "'unless the potential plaintiff communicates with them first and consents to further communications.'" *Chin Chiu Mak v. Osaka Japanese Restaurant*, 4:12-CV-3409, 2014 WL 222537, at *3 (S.D. Tex. Jan. 21, 2014) (quoting *Lima v. Int'l Catastrophe Solutions, Inc.*, 493 F. Supp. 2d 793, 801 (E.D. La. 2007)); *see also Hipp v. Liberty Nat. Life Ins. Co.*, 164 F.R.D. 574, 576 (M.D. Fla. 1996) ("[A]ny other communication

between the Plaintiffs or their counsel and these sought after [potential opt-in] parties is strictly prohibited by this Court.").

Plaintiffs' request to respond to Facebook queries with a pre-approved message is not comparable to traditional situations in which "courts have permitted communications by Plaintiffs' counsel after phone or in-person inquiries by potential class members[.]" ECF 61 at 1. Plaintiff's proposed response to Facebook queries, which they admit "would be visible to potential opt-in plaintiffs who did not themselves make the initial inquiry" (ECF 61 at 2 n. 2), has the "potential to unnecessarily 'stir up litigation[.]'" *Calderon*, RWT-10-CV-1958, 2011 WL 98197, at *8 (D. Md. Jan. 12, 2011) (quoting *Montoya*, CCB–07–455, 2008 WL 554114, at *4).

It is also noteworthy that the proposed response is duplicative and unnecessary. Both the Facebook Notice and the proposed response direct Facebook users to click on the link to learn more about the suit. Any Facebook user who wants to communicate with counsel about his or her queries can click on the link beneath the Facebook post and call counsel at one of the two numbers provided. *See* http://www.browngold.com/mendoza-mos. The proposed response essentially restates what has already been disseminated.

## I.     Conclusion

For the foregoing reasons, I shall deny the portion of ECF 53 in which plaintiffs seek leave to "post a pre-approved response to queries about the case made by potential class members through social media."  ECF 53 at 1.

An Order follows.

Date: October 14, 2016                                       /s/
                                                        Ellen Lipton Hollander
                                                        United States District Judge